UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA C. JETER,

    Plaintiff,                    Civil Action No. 12-10591

        v.                      District Judge Lawrence P. Zatkoff
                                    Magistrate Judge R. Steven Whalen

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Donna C. Jeter brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The parties have filed cross-motions for summary judgment. Both motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment [Doc. #12] be DENIED, and that Plaintiff's Motion for Summary Judgment [Doc. #11] be GRANTED, remanding the case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On July 21, 2009, Plaintiff applied for DIB and SSI, alleging an onset of disability date of November 15, 2008 (Tr. 123-132). After the initial denial of her claim, Plaintiff requested an administrative hearing, held on June 7, 2011 in Flint, Michigan (Tr. 22). Administrative Law Judge ("ALJ") Andrew G. Sloss presided. Plaintiff, unrepresented, testified (Tr. 25-30), as did Vocational Expert ("VE") Stephanee Leech (Tr. 30-33). On June 20, 2011, ALJ Sloss found that although Plaintiff was unable to perform her past relevant work, she was capable of a significant range of other work (Tr. 15, 17). On December 14, 2011, the Appeals Council denied review (Tr. 1-3). Plaintiff filed the present action on February 10, 2012.

## BACKGROUND FACTS

Plaintiff, born September 2, 1962, was 48 at the time of the administrative decision (Tr. 19, 109). She left school in ninth grade (Tr. 185) and worked previously as a general laborer, fast food worker, and as a presser for a dry cleaner (Tr. 182). Her application for benefits alleges disability as a result of depression, stress, an ovarian cyst, migraines, and anemia (Tr. 181).

    **A.**    **Plaintiff's Testimony**

The ALJ prefaced Plaintiff's testimony by noting that she was unrepresented (Tr. 24). Plaintiff declined the ALJ's offer to adjourn the hearing to allow her to secure counsel (Tr. 24).

Plaintiff reported that she left school in ninth grade, noting that she had been placed in special education for a limited period while in grade school (Tr. 26). She denied holding a current driver's license (Tr. 26). She stated that she had not worked for "a few months," but that she was paid $200 each month by the state for living with her mother as a home health care aide (Tr. 27). She indicated that her responsibilities as a home health care aide for her mother were limited to "babysitting" (Tr. 27-28).

Plaintiff alleged that depression prevented her from working (Tr. 28). She stated she was unable to seek regular treatment due to financial and transportation constraints (Tr. 28-29). She stated that she had $22,000 in hospital debts (Tr. 28). She reported experiencing hot flashes, seeing "dots" on a daily basis, and sleeping problems (Tr. 28). She stated that she currently took Lexapro and Seroquel, adding that she thought she also took Flexeril (Tr. 29). She reported that she seldom cooked and spent most of the day watching television (Tr. 30). She denied going shopping or visiting friends, indicating that she spent most of her time in the house (Tr. 30).

**B.    Medical Evidence**[1]

**1. Treating Sources**

---

[1] Conditions unrelated to the disability claim as well as records predating the alleged onset date of November 15, 2008 by more than one year, while reviewed in full, are discussed only where relevant to the present claim.

In July, 2005, Plaintiff attempted suicide (Tr. 282, 284, 333). She was assigned a GAF of 50 and diagnosed with substance abuse disorder (alcohol) and major depression[2] (Tr. 285, 334). In October, 2005, Plaintiff sought mental health treatment (Tr. 239-240). She was diagnosed with major depression and continued on therapeutic trials of Lexapro and Seroquel (Tr. 240, 285). Plaintiff denied physical problems, but reported changes in sleep patterns (Tr. 243). She was assigned a GAF of 55[3] (Tr. 244). In March, 2006, Plaintiff reported a decrease in psychological symptoms but complained of continued depression and stress as a result of the impending death of her brother (Tr. 251). In May, 2006, Plaintiff reported increased difficulty sleeping (Tr. 274).

Plaintiff received emergency treatment in May, 2009 for vaginal bleeding (Tr. 422). Treating records show a history of depression (Tr. 423). In January, 2009, Plaintiff sought emergency treatment for throat pain (Tr. 427). She appeared fully oriented, but a history of depression was noted (Tr. 426-428). In May, 2009, Plaintiff received emergency treatment for chest pain (Tr. 431). Treating notes state that she did not appear anxious or depressed (Tr. 432). She admitted smoking one pack of cigarettes each day and drinking two to three

---

[2] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (*DSM-IV-TR*)(4th ed.2000).

[3] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* (*DSM-IV-TR*)(4th ed.2000).

cans of beer weekly (Tr. 432). The following month, Janes Street Academic Community Health Center treating records show that Plaintiff continued to experience depression and insomnia (Tr. 456). She was given samples of Seroquel (Tr. 455). In August, 2009, Plaintiff was informed by Janes Street staff that she would be required to make an appointment with a psychologist to obtain Lexapro (Tr. 452).

### 2. Non-Treating Sources

In April, 2006, Debra C. Price completed a non-examining Psychiatric Review Technique, finding the presence of an affective disorder and substance abuse disorders (Tr. 255, 258,263). She found that Plaintiff experienced moderate restrictions in daily living, social functioning, and concentration, persistence, or pace (Tr. 265). Dr. Price also completed a Mental Residual Functional Capacity Assessment, finding moderate limitations in the ability to understand, remember, and carry out detailed instructions; maintain concentration for extended periods; interact appropriate with the general public; and set realistic goals (Tr. 270). Dr. Price found Plaintiff's claims credible but noted that "due to social avoidance, she would be best suited for a work setting with limited public contact" (Tr. 271).

In June, 2006, consultive examination notes state that Plaintiff reported insomnia, anemia, and depression (Tr. 278). She also reported one suicide attempt in the previous year (Tr. 278). A physical exam was unremarkable, but Plaintiff exhibited "some mannerisms consistent with anxiety" (Tr. 280). A second Psychiatric Review Technique and Mental

Residual Functional Capacity, performed in August, 2006, found identical limitations to those found by Dr. Price two months earlier (Tr. 265, 270-271, 302, 306-307).

In October, 2009, psychologist Bruce Fowler, Psy.D. conducted an examination on behalf of the SSA (Tr. 465-471). Plaintiff reported that one brother had died from a drug overdose and that her mother and sister were currently "doing drugs" (Tr. 465). She reported that she worked at Burger King "three or four months" before the hearing, but that the work was limited to "four hours a day, once a month" (Tr. 465). Plaintiff stated that she stopped working after experiencing an anxiety attack at work (Tr. 465). She reported taking Seroquel for sleep, Lexapro for anxiety and depression, and Tylenol p.m. for headaches (Tr. 466). She dropped out of school in the ninth grade after her mother left town (Tr. 466). Plaintiff reported that she had no friends and "very difficult relationships" with her mother and twin sister with whom she currently lived (Tr. 466). Dr. Fowler observed that it was "moderately difficult to establish rapport" with Plaintiff (Tr. 467). Plaintiff appeared mildly anxious with a normal affect (Tr. 467). She denied psychiatric treatment directly following her July, 2005 suicide attempt (Tr. 467). She reported that she had been experiencing a migraine headache for the past three days (Tr. 468-469). Dr. Fowler assigned Plaintiff a GAF of 45 with a "guarded to fair" prognosis (Tr. 469). He recommended that Plaintiff "remain in psychotherapy and continue to receive psychotropic medication" (Tr. 469). He found that Plaintiff's anxiety and depression "clearly interfere[d] with her ability to perform any job on a consistent and reliable basis (Tr. 469). He determined that Plaintiff could manage her

benefits "with assistance" (Tr. 469).  In February, 2011, Plaintiff underwent a hysterectomy without complications (Tr. 472-478).

### C. Vocational Expert Testimony

VE Stephanee Leech classified Plaintiff's former work as a fast food cook as exertionally medium and semiskilled; general laborer, presser, and cleaner, medium/unskilled; and fast food worker and sandwich maker, light/unskilled[4] (Tr. 31, 238). The ALJ then posed a hypothetical question to the VE  (Tr. 32).  Taking into account Plaintiff's age, education, and work experience, the ALJ asked what jobs would be available to an individual limited to "unskilled work" at the "light exertional level"  (Tr. 32).

In response, the VE testified that although the hypothetical individual could work as an assembler (4,100 jobs in the lower peninsula of Michigan); packer (9,400); and inspector (5,900) (Tr. 33).  In response to a second hypothetical question, the VE testified that if the same individual were "unable to engage in sustained work activity on a regular and continuing basis for a full eight-hour day, five days a week for a 40-hour work week or an equivalent work schedule," all work would be precluded (Tr. 33).  The VE concluded by

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

stating that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 33).

### D. The ALJ's Decision

Citing the medical transcript, the ALJ found that Plaintiff experienced the severe impairments of bipolar disorder and depression, but found that neither condition met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr.10, 12). The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for "a full range of work at all exertional levels . . . but limited to unskilled work" (Tr. 13).

Citing the VE's testimony, the ALJ found that although Plaintiff was unable to perform any of her former work, she could perform the work of an assembler, packer, and assembler (Tr. 15-16). The ALJ discounted Plaintiff's allegations of "extreme symptoms" by noting that Plaintiff had not sought "significant treatment other than medication since late 2009" (Tr. 14). He acknowledged Plaintiff's financial difficulties may have contributed to the lack of treatment, but noted the absence of even "emergency care for mental symptoms" (Tr. 14). He noted that Plaintiff's ability to work part time after the onset of disability and secure the position of home health care aide demonstrated that her psychological limitations were not as severe as alleged (Tr. 14).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In

evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  A Full and Fair Hearing

Plaintiff faults the ALJ for failing to observe that some of her  psychological treating records from 2009 and possibly 2010 were not included in the administrative transcript. *Plaintiff's Brief* at 6, *Docket #11.*  She contends that the ALJ's failure to consider these records deprived her of a "full and fair" hearing.  *Id.*        .

Although an ALJ cannot properly assume the role of counsel, "[h]e acts as an examiner charged with developing the facts."  *Lashley v. Secretary of Health and Human Services* 708 F.2d 1048, 1051 (6th Cir.1983); *Richardson v. Perales,* 402 U.S. 389, 411 91 S.Ct. 1420, 1432, 28 L.Ed.2d 842 (1971). Where a claimant is unrepresented at the hearing, "the ALJ has a duty to exercise a *heightened* level of care and assume a more active role" in the proceedings. *Lashley* at 1051 (emphasis added) (*citing Smith v. Harris,* 644 F.2d 985, 989

(3d Cir.1981)). However, as a general rule, where the existing records provide more than adequate grounds for determination, the ALJ is not required to "ferret out" additional records that the claimant neglected to procure. *Nabours v. Commissioner of Social Sec.,* 50 Fed.Appx. 272, 275, 2002 WL 31473794, *2 (6th Cir.2002). *See Boyes v. Secretary of Health and Human Services* 46 F.3d 510, 512 (6th Cir.1994); accord *Halsey v. Richardson,* 441 F.2d 1230 (6th Cir.1971)("Claimant bears the burden of proving his entitlement to benefits"); 20 C.F.R. § 404.1512(a). Notwithstanding the duty to develop the record, the ALJ is not required to be "telepathic or resort to divination". *Banuelos v. Chater,* 103 F.3d 137, 1996 WL 681261, *1 (9th Cir. November 22, 1996)(unpublished).

In this case, the ALJ did not need supernatural powers to discover the existence of treating records which had not been made part of the transcript before him. The ALJ cited Dr. Fowler's October, 2009 consultive findings at numerous points in the opinion but overlooked Fowler's remark that Plaintiff was currently receiving biweekly psychological treatment from an individual working in the same office (Tr. 466). Although cited by Dr. Fowler, the current transcript does not contain these records. The omission of this evidence is particularly critical since the ALJ supported both his RFC and credibility determination by noting the absence of recent treating records. The ALJ's statement that Plaintiff "has received very little treatment for bipolar disorder other than prescription of Lexapro and Seoquel by a primary care doctor," is directly contradicted by Dr. Fowler's statement (Tr. 11). The fact that the ALJ did not have benefit of all of the psychological treating records also casts doubt on his finding that "no treating source has rendered . . . a diagnosis" of

agoraphobia (Tr. 12). Paradoxically, while the ALJ relied heavily on a few of Fowler's observations and the lack of treating records to discount Plaintiff's claims (Tr. 14), he overlooked Fowler's statement that Plaintiff was receiving psychological treatment from Fowler's own colleague during the same period.

While Plaintiff would ordinarily bear the burden of providing records supporting the disability claim, her failure to procure these records can be excused by multiple factors. First, as noted by her current counsel, Plaintiff was formerly represented by an individual from September 8, 2009 until 25 days before the hearing (Tr. 63, 120). She would have reasonably believed that her former counsel had requested the relevant records from treating sources and provided them for review by the SSA. Further, although Plaintiff waived her entitlement to counsel at the hearing, she would not be expected to discern that a number of treating records had been omitted from the transcript or recognize their significance to her claim. Because review of these records would be likely to change or modify the ALJ's determination (at least as to the absence of treating records), a remand is appropriate for review of the missing files.

**B. Other Grounds for Remand**

The administrative opinion contains additional errors which provide independent grounds for remand. First, the hypothetical question and RFC, allowing for the performance of all "unskilled work" does not account for the ALJ's own finding that Plaintiff experienced "moderate" deficiencies in concentration, persistence, and pace ("CPP").[5] *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005)(Friedman, J.)(qualifiers of simple and unskilled generally inadequate to account for moderate limitations in CPP). Because the hypothetical limitation of "unskilled work" did not reflect Plaintiff's concentrational and pacing limitations, the VE's corresponding job findings do not constitute substantial evidence. *Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 ( E.D. Mich. 2003)(Roberts, J.)(Defendant's failure to meet his Step Five burden warrants remand).

As a whole, the administrative opinion undermines, if not distorts, record evidence supporting a greater degree of limitation. For example, the ALJ noted that Plaintiff's ability

---

[5]

Moderate deficiencies in CPP represent substantial limitations which must be acknowledged in the hypothetical question. *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005)(Friedman, J.); 20 CFR § 416.920a (3)(4)(moderate CPP deficiencies [as opposed to *mild* deficiencies] denote some level of work related limitation). The failure to account for moderate deficiencies in concentration, persistence and pace in the hypothetical question constitutes reversible error. *Edwards*. There is some divergence of opinion in this district and elsewhere as to what modifiers sufficiently account for moderate deficiencies in CPP. *Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D.Mich. August 30, 2011)("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, *7 (E.D.Mich. June 16, 2008)). However, "unskilled work," is generally insufficient to account for moderate deficiencies in CPP. *Edwards* ; *Ealy v. Commissioner,* 594 F.3d 504, 516 (6th Cir.2010)("simple repetitive" not sufficient);

to work part time at a fast food restaurant showed that she was capable of "completing her own paperwork and job applications," ignoring her statement that her work was limited to "four hours a day, once a month," and that she quit after experiencing an anxiety attack while on the job (Tr. 465). The ALJ's reliance on the lack of psychological treatment is erroneous, given the unreviewed evidence. To be sure, he acknowledged that Plaintiff's failure to seek regular psychological care could be attributable to "insurance difficulties" (Tr. 14). However, the fact that she had not received emergency care for mental symptoms during the relevant period does not establish that she did not experience greater limitations than those found in the hypothetical question or RFC (Tr. 14).

Given the fairly slim evidence supporting the RFC and credibility determination, the "partial" adoption of Dr. Fowler's examining conclusions is especially questionable. The ALJ adopted Dr. Fowler's observation that Plaintiff appeared "generally cooperative" to support his conclusion that she did not experience significant social limitations (Tr. 14, 467). However, the ALJ ignored Dr. Fowler's accompanying observations that Plaintiff appeared "mildly anxious," and made certain calculations slowly (Tr. 467, 469). He also discounted Dr. Fowler's conclusion that "anxiety and depression [would] clearly interfere with Plaintiff's ability to perform any job on a consistent and reliable basis," notwithstanding the fact that the conclusion was based on recent treating findings by another provider and possibly, the missing treating records by his colleague[6] (Tr. 469 *citing* 452-459).

---

[6] Dr. Fowler's citation to the "incorporated" records refers to the Janes Street Academic Community Health Center records created between June, 2008 to August, 2009

In conclusion, the failure to review the above-discussed treating records warrants a remand for the procuring and considering this evidence. Further, the exclusion of key limitations from the hypothetical question provides independent grounds for remand for additional vocational testimony. Notwithstanding these errors, the present transcript does not establish an "overwhelming" case for disability. *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171 (6th Cir. 1994). As such, the errors discussed herein, while critical, do not automatically entitle the Plaintiff to an award of benefits. *Id.* Accordingly, the case should be remanded to the administrative level for further proceedings consistent with this Recommendation.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #12] be DENIED, and that Plaintiff's Motion for Summary Judgment [Doc. #11] be GRANTED, remanding this for further proceedings consistent with the above findings pursuant to the fourth sentence of 42 U.S.C. 405(g).

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

---

(Tr. 452-459). He noted that Plaintiff was currently treated at his facility by an individual referred to only as "Becky" (Tr. 466). It is unclear whether Fowler also considered "Becky's" treating records in making his conclusions.

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                          s/R. Steven Whalen
                                                          R. STEVEN WHALEN
                                                          UNITED STATES MAGISTRATE JUDGE

Date: February 6, 2013

**CERTIFICATE OF SERVICE**

      I hereby certify on February 6, 2013, I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on February 6, 2013: **None**

                                              s/Terri L. Hackman
                                              Judicial Assistant to
                                              Magistrate Judge R. Steven Whalen